UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARYL LAMONT SAMPSON,

                Plaintiff,                            Case No. 15-cv-10704

v                                        Honorable Thomas L. Ludington

VILLAGE OF MACKINAW CITY, et al.,

                Defendants.

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Daryl Lamont Sampson initiated this case on February 25, 2015 against Defendant Mackinaw City and Defendant Robert Klave, a 12-year veteran with the Mackinaw City Police Department. The complaint contains five counts. *See* Compl., ECF No. 1. Sampson alleges that Defendant Klave falsely arrested him in the early morning hours of March 14, 2013 and then initiated a malicious prosecution against him in violation of federal and state law. *Id.* Sampson also alleges that his injuries were the result of Defendant Mackinaw City's reckless execution of its policies, customs, and practices under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978). *Id.*

After the close of discovery, Plaintiff and Defendants filed cross-motions for summary judgment. *See* ECF Nos. 23, 26. For the reasons set forth below, Plaintiff's motion will be denied and Defendants' motion will be granted.

**I.**

In February of 2012, the Drug Enforcement Agency (DEA) began investigating a group suspected of trafficking narcotics from Detroit to northern Michigan. *See* Supernault Dep. 29-30,

ECF No. 26 Ex. 4.   The investigation was pursued by the Straits Area Narcotics Team ("SANE"), a multi-jurisdictional drug task-force in northern Michigan. *Id*. Instrumental to SANE's investigation was a drug user who served as a confidential informant after becoming concerned about the amount of drugs being used and distributed at a motel owned by his mother in Mackinaw City (the "CI"). *Id*. at 48. One of the primary suspects in the investigation was a man named Darryl Decosta Duncan ("Mr. Duncan").

### A.

The events giving rise to Plaintiff Sampson's arrest took place in the late evening of March 13, 2013 and early morning of March 14, 2013.   According to Defendants, at approximately 9:30 PM on Defendant Klave was contacted by Detective Supernault, a member of SANE, and advised that Mr. Duncan "would possibly be traveling to Mackinaw City in the evening hours to receive some money owed to him by CI." Supp. Case Rep., ECF No. 26 Ex. 2. Klave was advised that Mr. Duncan would likely be in possession of narcotics, and that the vehicle he would be traveling in was unknown. *Id*.

Just after 3:00 am on the morning of March 14, 2013, the CI called 911 to inform Defendant Klave that a drug dealer had arrived at his location. 911 Recording, ECF No. 33 Ex. 2. The 911 dispatcher informed the CI that she would have Defendant Klave return his call. *Id*. Defendant Klave returned the CI's call in a manner of minutes. *See* Supp. Case Rep.   The CI, who seemed "very nervous," informed Defendant Klave that Mr. Duncan was currently parked behind the hotel in a white Dodge Intrepid.   The CI stated that Mr. Duncan had heroin on his person that he wanted to sell, and that he had told Mr. Duncan that, because he did not want to purchase drugs at his mother's motel, they would need to go to a different location for the deal. *Id*.   The CI further told Klave that there was an unknown black male in the vehicle with Mr.

Duncan. *Id*. The CI intended to ask the two men to follow him in their vehicle, hoping that Klave would be able to make a traffic stop on the vehicle. *Id*.

Klave advised the CI to disregard a stop sign on the route in the hopes that the driver of the white Dodge Intrepid would also disregard the stop sign.  *Id*. At approximately 3:14 AM, after watching the CI's vehicle pass through an intersection without stopping, Klave pulled over a white Intrepid that was following the CI's vehicle after it allegedly rolled through the stop sign without stopping. *Id*.

After stopping the vehicle, Klave arrested the passenger, Mr. Duncan, who he was familiar with, on an outstanding arrest warrant. *See* Arrest Video, ECF No. 26 Ex. 5.  Sampson stated to Klave that he was driving Mr. Duncan up to Mackinaw to see a friend because the friend owed him money.  *See* Supp. Case. Rep. Klave could smell the odor of burnt marijuana in the vehicle. *Id*.  Klave then sought consent to search the vehicle from Sampson, who acknowledged that he owned the vehicle and agreed to the search. *Id*.  Upon searching the vehicle, Klave discovered two "baggies" of heroin behind the passenger's seat. *Id*. Klave also discovered a burnt marijuana joint inside a packet of cigarettes.  Klave then arrested Sampson for (1) possession with intent to deliver 4 grams of heroin and (2) maintaining a drug vehicle in violation of M.C.L. § 333.7405(d) because the drugs were found located in his vehicle.  At some point that night, Detective Supernault informed Klave that Plaintiff Sampson was somehow directly connected with the SANE investigation.  *See* Klave Dep. 66-67; Supernault Dep. 65-66.

**B.**

Plaintiff's version of the relevant events differs in some ways from Defendants' version. According to Plaintiff, at some point on March 13, 2013, Mr. Duncan arrived at his home in Detroit and offered Sampson $150 to drive him to Mackinaw City. *See* Sampson Dep. 53-54.

Sampson accepted the offer, and the two left right away for Mackinaw City. *Id*. at 55. Sampson did not remember the exact time that they left, but believed that it was just getting dark. *Id*. at 56. Sampson testified that Mr. Duncan told him that the purpose of the trip was to collect some belongings he had left in Mackinaw City after going to jail, which were currently in the possession of a friend at a hotel. *Id*. He testified that he did not know that Mr. Duncan was in possession of narcotics, and that he would not have driven him if he had known he was in possession of narcotics. *Id*.

After arriving at the hotel in Mackinaw City, Mr. Duncan got out of the car and entered a hotel room. *Id* at 58-59. Sampson testified that he remained in the vehicle. *Id*. After around 10 minutes Mr. Duncan returned to the vehicle and directed Sampson to follow a man in a different vehicle.  *Id*. at 61-62.  Sampson began following the man, and was quickly pulled over for allegedly running a stop sign. *Id*.  Sampson testified that he did not run a stop sign. *Id*. at 84.

The police officer, Defendant Klave, arrested Mr. Duncan on an outstanding arrest warrant. Klave then requested permission to search the vehicle, and Sampson consented. *Id*. at 62-63.  Sampson testified that he consented to the search because he was confident that there were no narcotics in the vehicle. *Id*. at 83.  Upon searching the vehicle, however Defendant Klave discovered two small bags of heroin on the floor behind the passenger's seat. Samspon informed Klave that the heroin was not his and that he had not been aware that there was heroin in the vehicle. *Id*.  Mr. Duncan informed Klave that the heroin was his.  Klave arrested Sampson on two counts: (1) possession with intent to deliver 4 grams of heroin; and (2) maintaining a dug vehicle in violation of M.C.L. § 333.7405(d). *See* Arrest Warrant Request, ECF No. 23 Ex. K.

## C.

Both Sampson and Mr. Duncan were taken into custody, and Defendant Klave prepared the following affidavit of probable cause:

> On 03-14-2013 at approximately 0314 hours I Officer Klave was contacted by CI who informed me that a White Dodge Intrepid would be following him near the Dixie Saloon in Mackinaw City. I was advised by CI that within the vehicle was a Darryl Duncan. I was advised by CI that they would be going to a different location so that DUNCAN could sell CI heroin. CI stated to me that there was heroin within the suspect vehicle.
>
> On the above date at approximately 0323 hours I observed the suspect vehicle following CI West on Central Ave. I noticed that the suspect vehicle bearing Michigan Registration CLB2718 did not come to a complete stop at the intersection of Huron and Central Ave. I conducted a traffic stop on the above vehicle on Central ave near Henry Street. Upon contract with the driver who was identified as a DARYL LAMONT SAMPSON b/m 12/16/1974 I advised the reason for the traffic stop as running the stop sign. I immediately recognized the passenger in the vehicle as a DARRYL DECOSTA DUNCAN b/m 11/20/1978. I advised DUNCAN to step out of the vehicle and he was placed under arrest for an active warrant out of our department. DUNCAN was placed in the back seat of patrol car 114 and was advised his Miranda warning.
>
> I then returned to the vehicle and asked DARYL LAMONT SAMPSON to step out of the vehicle. I asked SAMPSON if the vehicle was his and he stated that it was. I asked SAMPSON if there was any drugs or weapons inside the vehicle. He stated that there was not. I asked SAMPSON if I could search the vehicle and he stated that I could. Upon searching the vehicle I noticed Two small baggy type containers in the back seat of the vehicle believed to be heroin. Since the items were located within the vehicle the driver and owner of the vehicle DARYL LAMONT SAMPSON was also placed under arrest. I then returned to my patrol car and asked DUNCAN about the two baggy's. DUNCAN stated to me that the two baggy's located within the vehicle were his. DUNCAN stated that there was about 4 grams of heroin and it was his for personal use. Both subjects were placed under arrested for maintaining a drug vehicle, possession with intent delivery of 4 grams of heroin. Both subjects were cuffed from behind and transported to the Cheboygan County Jail without incident. The vehicle was transported to the Mackinaw City Police Department for inventory purposes.
>
> Note: Suspects were never advised about CI information given, for CI's own protection.

*Id.* (sics in original). The prosecutor for the county of Cheboygan, Daryl P. Vizna, authorized the arrest warrant for Plaintiff Sampson on March 15, 2013. *See* Vizna Aff., ECF No. 33. Ex. 4.

His authorization was based on Defendant Klave's affidavit and independent information he had regarding the CI. *Id*. The arrest warrant was signed by a magistrate judge that same day. *See* ECF No. 26 Ex. 5. Sampson was also arraigned on March 15, 2013, and bond was set by the Court for $100,000.00.

### D.

Sampson's preliminary examination was originally scheduled for March 27, 2013. However, Mr. Duncan's attorney was on vacation that date and the lab tests of the heroin were not yet available. Finding that the preliminary examinations for Sampson and Mr. Duncan should be run together for the convenience of the witnesses, and finding good cause to adjourn, Sampson's preliminary examination was adjourned until April 15, 2013 – over a month after his arrest. *See* Prelim. Exam Tr. 3, ECF No. 23 Ex. 8.  Sampson thus moved for dismissal of the charges against him on the grounds that the adjournment violated the 14-day rule.  The court denied Sampson's motion, and proceeded with the hearing. *Id*. at 4.[1]

In support of his argument that probable cause existed to arrest Sampson, the prosecuting attorney presented testimony from the CI and from Defendant Klave.  After hearing the testimony, Judge Barton found the vehicle stop to have been permissible and therefore bound Mr. Duncan over trial on "possession with intent to deliver heroin" but not on the second count of maintaining a drug vehicle because Sampson, not Mr. Duncan, owned the vehicle.  Without addressing the consent search or the heroin discovered in the vehicle by Klave, Judge Barton

---

[1] Michigan has a fourteen-day rule, as codified at M.C.L. § 766.4 ("the magistrate before whom any person is arraigned on a charge of having committed a felony shall set a date for a probable cause conference to be held not less than 7 days or more than 14 days after the date of the arraignment…..").  Such a preliminary examination may only be adjourned or delayed without the consent of a defendant upon a finding of good cause. *See* M.C.L. § 766.7. While the absence of an essential witness or the need to ensure that the defendant has counsel constitutes good cause for adjournment, inconvenience does not. *Compare People v. Williams*, 216 N.W.2d 499 (Mich.1974) *and People v. Bersine*, 210 N.W. 2d 501 (Mich. App. 1073) *with People v. Twomey*, 433 N.W.2d 418 (Mich. App. 1988). There is nothing in the record to suggest that any essential witnesses would have been unavailable at on March 27, 2013; only that it was more convenient for the witnesses to conduct the preliminary hearing for both defendants together.

dismissed both counts against Sampson because the CI did not testify that he had any prior contact with Sampson.   Sampson was not bound over on any charges, and was released from custody. *Id.*

On February 25, 2015 Sampson filed the instant suit, alleging four counts against Defendant Klave: (1) False arrest in violation of the Fourth Amendment under 42 U.S.C. § 1983; (2) Malicious prosecution in violation of the Fourth Amendment under 42 U.S.C. § 1983; (3) Common law false arrest and false imprisonment; and (4) Malicious prosecution in violation of M.C.L. § 600.2907.  Sampson also stated a claim against Defendant Mackinaw City, alleging the city had violated 42 U.S.C. § 1983 through the reckless execution of its policies, customs, and practices pursuant to *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978) and its progeny.

## II.

Now before the Court are the parties' cross-motions for summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).  The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

- 7 -

### A.

The parties first cross-move for summary judgment as to Plaintiff's § 1983 claim that he was falsely arrested in violation of the Fourth Amendment. "A plaintiff proceeding under § 1983 must establish that a person acting under color of state law deprived him of a right secured by the Constitution or by federal law."  In the specific context of § 1983 actions, the non-moving party "must demonstrate a genuine issue of material fact as to the following two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) that the deprivation was caused by a person acting under color of state law. *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quotations and citations omitted). Because there is no dispute that Defendant Klave was acting under the color of state law, only the first prong is at issue in this case.

### i.

Plaintiff first argues that Defendant Klave did not properly initiate the stop of Plaintiff Sampson's vehicle, thus depriving him of his Fourth Amendment right to be free from unreasonable searches and seizures. A stop of a vehicle "constitutes a seizure within the meaning of the Fourth Amendment." *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012). A traffic stop is justified "when a police officer has reasonable suspicion of an ongoing crime or a completed felony or when he has probable cause to believe that a civil traffic violation has been committed." *Hoover v. Walsh*, 682 F.3d 481, 493 (6th Cir. 2012).

### a.

Defendants first argue that Klave had probable cause to believe that Sampson committed a civil traffic violation by running a stop sign.  Sampson contests the accusation, and testified that he did not run a stop sign. *See* Sampson Dep. 84.  Taking the facts in a light most favorable

to Plaintiff Sampson, there is a material factual dispute as to whether a civil traffic infraction could give rise to justification for the traffic stop.

**b.**

Defendants next argue that the traffic stop was justified by Klave's reasonable suspicion that Plaintiff Sampson was involved in an ongoing crime under *Terry v. Ohio*, 392 U.S. 1 (1968). Under the first prong of *Terry*, "an officer may seize an individual without offending the Fourth Amendment if the 'officer has reasonable suspicion that criminal activity may be afoot.'" *Hoover*, 682 F.3d at 494 (citing *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008). As explained by the Sixth Circuit:

> a *Terry* stop requires a particularized and objective basis for suspecting the particular person ... of criminal activity based on specific and articulable facts. We determine whether an officer has the requisite quantum of proof by looking at the totality of the circumstances. This analysis requires us to consider all circumstances surrounding the actions of a suspected wrongdoer. Pertinent circumstances include the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred. We must consider these circumstances as a unified whole rather than as a series of disconnected facts; the lawfulness of an investigatory stop is judged by the totality of the circumstances to determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately. Reasonable suspicion requires more than a "mere hunch," but less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard.

*Hoover*, 682 F.3d at 494 (quotations and citations omitted).

Here, it is uncontested the SANE taskforce was investigating Sampson's passenger, Mr. Duncan, as part of a narcotics investigation, and that SANE had received information that Mr. Duncan might be traveling to Mackinaw City on the night of March 13, 2013 to receive money owed to him by a CI. It is uncontested that Plaintiff Sampson proceeded to drive Mr. Duncan to a hotel in Mackinaw City that same night. *See* Sampson Dep. 59. It is also uncontested that the

- 9 -

CI called 911 at around 3:00 AM on March 14, 2013 to inform Defendant Klave that a heroin dealer was at his location at the Stay Inn Motel in Mackinaw City. *See* Def.'s Mot. for Summ. J. Ex. 4.  It is further uncontested that the CI informed Klave that Mr. Duncan had narcotics that he wanted to sell to the CI, and that Mr. Duncan was seated in a white Dodge Intrepid behind the motel – or the vehicle driven by Plaintiff Sampson. Finally, it is uncontested that after Mr. Duncan returned to Sampson's vehicle from the hotel, Defendant Klave observed Sampson begin to follow the CI's vehicle down the road. Klave then stopped Sampson's vehicle.

Even considering the facts in a light most favorable to Plaintiff Sampson, all of these factors together create a reasonable suspicion of criminal activity justifying the stop of Sampson's vehicle. The case cited by Plaintiff in support of his claim that the stop was unreasonable, *Penrice v. Szokola*, 2016 U.S. Dist. LEXIS 13339 at 8 (E.D. Mich. Feb. 4, 2016), does not suggest otherwise.  Here, the information provided by a known CI on multiple occasions, Klave's corroborating observations, the location of the events, and the fact that all events occurred in the middle of the night together gave rise to at least reasonable suspicion that the vehicle's occupants were involved in a drug transaction.

Because Defendant Klave had reasonable suspicion of criminal activity, the second prong of *Terry* requires an inquiry into whether the stop was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983).  Plaintiff makes no allegation that the stop was unreasonable in scope under *Terry* based on the reasonable suspicion of criminal activity.  Instead, Plaintiff again argues that he did not run a stop sign.  Because Plaintiff has not met his burden of showing a material dispute regarding whether the stop was reasonable

- 10 -

under *Terry*, Defendant Klave's initial stop of Plaintiff Sampson's vehicle was proper as a matter of law.

### ii.

Because the initial stop was proper, the question becomes whether Klave's search of the vehicle was proper. Plaintiff concedes that he gave Klave voluntary consent to search to search his car. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."). Accordingly, Klave's search of the vehicle was proper as a matter of law.

### iii.

Having determined that both the initial stop and the vehicle search were lawful, the next question is whether Defendant Klave had probable cause to arrest Plaintiff Sampson. "An investigative detention that is constitutionally permissible when initiated may "ripen into a ... seizure that must be based on probable cause." *United States v. Heath*, 259 F.3d 522, 530 (6th Cir.2001) (internal quotation marks omitted). "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005).

"Probable cause requires only the probability of criminal activity not some type of 'prima facie' showing." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988). The probability of criminal activity, in turn, is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). It is viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[.]" *Klein v. Long*,

275 F.3d 544, 550 (6th Cir. 2001) (quotations and citation omitted).  Probable cause to arrest therefore requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).  Furthermore, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id*. at 36.

Here, at the preliminary hearing a state judge determined that there was insufficient evidence to bind Sampson over for trial on either the drug offense or the offense of maintaining a drug vehicle. Plaintiff Sampson argues that summary judgment should be granted in his favor based on this fact alone.  This Court need not address the question of whether the state court judge's finding of no probable cause controls in this action because even if Plaintiff establishes that he was arrested without probable cause he cannot overcome Defendants' entitlement to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223 (6th Cir. 2009) (overruling a rigid two-step approach in determining government officials' qualified immunity claims, and holding that Courts may consider qualified immunity before determining whether a plaintiff has established the violation of a constitutional right).

**iv.**

Even if Plaintiff Sampson was arrested without probable cause, Defendants may still be entitled to qualified immunity.  Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985). The doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

The existence of qualified immunity turns on the question of whether a defendant's action violated clearly established law. *Id*. at 243-44. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id*. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614, (1999). "The Fourth Amendment conditions warrants on probable cause and prohibits unreasonable seizures. A police officer violates those restrictions only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 771-72 (6th Cir. 2014).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The relevant inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

There is no dispute that Defendant Klave had probable cause to arrest Sampson's passenger, Mr. Duncan: Mr. Duncan was the subject of an ongoing narcotics investigation, he had been implicated in a drug deal that night by a CI, and the drug deal was subsequently corroborated by Defendant Klave through the traffic stop and discovery of heroin in the vehicle.

There was also reason to believe that Sampson and Mr. Duncan were working together. In the context of a drug case, the Supreme Court has specifically held that an officer may

reasonably infer a common enterprise between the driver of a vehicle and a passenger under certain circumstances. *See Maryland v. Pringle*, 540 U.S. 366 (2003); *see also U.S. v. Montgomery*, 377 F.3d 582, 590-92 (6th Cir. 2004). Defendant Klave's assumption that Mr. Duncan and Sampson were engaged in a common enterprise was reasonable under the circumstances, especially considering that Klave knew that Sampson had driven Mr. Duncan for around five hours from Detroit in Sampson's car, knew the suspects did not arrive until around 3:00 AM, knew Sampson had waited at the hotel for around ten minutes before following the CI in his vehicle, and ultimately discovered heroin in Sampson's vehicle.

Furthermore, upon discovering heroin inside Sampson's vehicle in a location accessible to Sampson, Defendant Klave could have reasonably believed that he had probable cause to arrest Sampson. *See United States v. Hensley*, 469 U.S. 221, 235 (1985). This was bolstered by Detective Supernault's statement to Klave that Sampson was also somehow a subject of the SANE investigation. Whether that claim was ultimately proved true is irrelevant to the question of what Klave reasonably believed at the time of the arrest. Similarly, Defendant Klave was not required to believe Sampson's statement that the drugs did not belong to him. Finally, the fact that the judge ultimately determined that the arrest lacked probable cause does not change the fact that Klave's actions were not unreasonable in light of clearly established legal rules. Because Klave acted reasonably in believing that there was probable cause to arrest Sampson, he is entitled to qualified immunity on Sampson's § 1983 false arrest claim.

## B.

The parties also cross-move for summary judgment as to Plaintiff Sampson's malicious prosecution claim. A claim of malicious prosecution is distinct from a claim of false arrest in that the malicious prosecution claim "remedies detention accompanied not by absence of legal

process, but by wrongful institution of legal process." *Wallace v. Kato*, 549 U.S. 384, 390, (2007). A plaintiff raising a malicious prosecution claim must satisfy the following four elements: (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) probable cause for the prosecution was lacking; (3) the plaintiff suffered a deprivation of liberty under the Fourth Amendment as a consequence of the legal proceeding; and (4) the criminal proceeding resolved in the plaintiff's favor. *See Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). Under the first prong, a defendant need not have actually made the decision to prosecute to be held liable for malicious prosecution. Instead, the Sixth Circuit has determined that law enforcement officers may be held liable for malicious prosecution if they influence or play a role in the criminal process. *Id*. at 311-12.

Even assuming Plaintiff Sampson has satisfied the elements of a malicious prosecution claim, Plaintiff cannot overcome Defendant Klave's assertion of qualified immunity. As set forth above, "[t]he Fourth Amendment conditions warrants on probable cause and prohibits unreasonable seizures. A police officer violates those restrictions only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Newman*, 773 F.3d at 771-72.

Plaintiff argues that Klave is not entitled to qualified immunity because he made materially false statements in the affidavit that were either knowingly false or in reckless disregard for the truth. In support of this argument, Plaintiff emphasizes that the affidavit did not disclose the identity of the CI, the CI's criminal history or reliability, and Klave's lack of relationship with the CI. *See* Supp. Rep. The lack of information about the CI and his connection to the SANE investigation is not a materially false statement, but an omission. While the omission is arguably negligent, negligence alone does not give rise to a claim of malicious

- 15 -

prosecution. *Newman*, 773 F.3d at 772.  The omission was not misleading, since both the prosecutor and the judge authorizing the warrant had the opportunity to independently make a probable cause determination.

Plaintiff also emphasizes the fact that Defendant Klave does not state in his affidavit that the bags of heroin were found in the backseat of the passenger side of the vehicle or that Plaintiff denied the bags of heroin belonged to him. Again, these are omissions and not false statements. The affidavit states that the bags of heroin were discovered "in the back seat of the vehicle."  *See* Aff. ECF No. 30 Ex. J. This representation is not materially false, and does not change Klave's subsequent statement that Sampson was arrested because heroin was discovered in his vehicle. Omission of the specific location of the heroin does not alter the material fact that heroin was discovered in Sampson's vehicle.  Furthermore, the affidavit states that "DUNCAN stated to me that the two baggy[]s located within the vehicle were his.  DUNCAN stated that there was about 4 grams of heroin and it was his for personal use."  The omission of Sampson's disclaimer of ownership was neither deliberate nor in reckless disregard of the truth.

Plaintiff also emphasizes that Klave's affidavit does not mention that the CI did not refer to Plaintiff Sampson at all.  Klave did not falsely claim that the CI had implicated Sampson in any way.  Indeed, all of the information attributed to the CI in the affidavit refers to Mr. Duncan alone. Klave was not required to affirmatively state that the CI had not mentioned Sampson. The omission of such an affirmative statement was neither deliberate nor in reckless disregard of the truth.

Finally, Plaintiff alleges that Klave misrepresented that the CI had stated there was heroin in the vehicle, when in fact the CI had stated that Mr. Duncan had heroin on his person. Klave's affidavit states as follows: "I was advised by CI that within the vehicle was a Darryl Duncan.  I

was advised by CI that they would be going to a different location so that DUNCAN could sell CI heroin.  CI stated to me that there was heroin within the suspect vehicle." *See* Aff. ECF No. 30 Ex. J. Plaintiff does not identify any representation by the CI inconsistent with this statement. Moreover, if Mr. Duncan had heroin on his person and if Mr. Duncan was in the vehicle, then Klave's representation that there was heroin in the vehicle is not materially false. Klave's affidavit was "not so far off the mark" from the CI's so as to permit an inference of deliberate or reckless disregard for the truth. *Newman*, 773 F.3d at 772 (citing *Hutsell v. Sayre*, 5 F.3d 996 (6th Cir. 1993).

While these allegations might arguably furnish a foundation for a motion to suppress based on the inadequacy of the information contained in the affidavit, even considering the facts in a light most favorable to Plaintiff they cannot support an inference that Klave submitted deliberate or reckless falsehoods in the affidavit.  The allegations are therefore insufficient to overcome Klave's claim of qualified immunity. Because Defendant Klave was reasonable in believing that probable cause existed for Sampson's arrest and subsequent detention, and because he did not make any false representations in his affidavit that were in deliberate or in reckless disregard of the truth, summary judgment will be granted in Defendant's favor.

## C.

Defendant also moves for summary judgment on Plaintiff's *Monell* claim. In *Monell*, the Supreme Court held that municipalities are "persons" subject to suit under 42 U.S.C.A. § 1983. *Monell*, 436 U.S. at 700-01.  Such a claim may only be brought when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.  The Sixth Circuit has instructed that, to satisfy the

requirements of *Monell*, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (internal citations and quotations omitted).

Accordingly, to succeed on a *Monell* claim, a plaintiff must first allege that the municipality itself caused a constitutional tort. *Monell*, 436 U.S. 658 at 691.  A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id*.   Second, a Plaintiff must show that the alleged conduct qualifies as a policy.  *Monell* municipal liability may attach where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id.* at 690.  *Monell* liability may also attach where a plaintiff alleges "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id*. at 690-91. Municipal liability may also attach for policies promulgated by the official vested with final policymaking authority for the municipality.  *See Miller*, 408 F.3d at 813 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83, 106 (1986).  This second element requires a plaintiff to show "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  Third, a plaintiff must show causation.  In other words, a plaintiff must connect the municipality's policy to the particular injury alleged.

Plaintiff argues that it has established a *Monell* claim under a theory that Defendant Mackinaw City failed to supervise its police officers. Specifically, Plaintiff argues that Defendant Mackinaw City had a policy of not providing Defendant Klave with any performance evaluations. In order to state a claim under a *Monnell* "failure to train or supervise" theory a plaintiff must show that the need for additional supervision or training "is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, (1989).

Plaintiff Sampson has not met this burden. Plaintiff points to no evidence in support of his claim other than Defendant Klave's deposition, in which Klave stated only that he did not receive performance evaluations. Klave Dep. 12.  Performance evaluations are by no means the only way in which employees may be supervised by or receive feedback from employers. Indeed, immediately after stating that he did not receive performance evaluations Defendant Klave explained that he received yearly training on "arrests, procedure regarding arrests, [and] determination of probable cause." *Id.* at 13.  Plaintiff has presented no evidence that the lack of performance evaluations was a deliberately chosen custom, much less an official departmental policy. Plaintiff has also presented insufficient evidence to raise an inference that Defendant Mackinaw City was deliberately indifferent to his constitutional rights. Finally, Plaintiff has presented no evidence whatsoever that a lack of performance evaluations led to Sampson's alleged constitutional injury.  Because Plaintiff has provided no evidence in support of his *Monell* claim, summary judgment will be granted in favor of Defendant Mackinaw City.

**III.**

Because Plaintiff's federal claims will be dismissed on the merits, Plaintiff's related state law claims will be dismissed without prejudice. A federal court may exercise supplemental jurisdiction over a plaintiff's state law claims if they form part of the same controversy as the federal claim. *See* 28 U.S.C. § 1367(a). A federal court may decline to exercise supplemental jurisdiction over a claim if:

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over any state law claims rests within the court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). However, the dismissal of the claims over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Id.* at 863. In addition, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The issues presented are more appropriate for resolution by a state court and therefore the Court declines to exercise its supplemental jurisdiction. Plaintiffs' supplemental state law claims will therefore be dismissed without prejudice.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff Sampson's motion for summary judgment, ECF No. 23, is **DENIED.**

It is further **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 26, is **GRANTED.**

It is further **ORDERED** that Count 1, Count 2, and Count 5 of Plaintiff Sampson's complaint, ECF No. 1, are **DISMISSED with prejudice**.

It is further **ORDERED** that Count 3 and Count 4 of Plaintiff Sampson's Complaint, ECF No. 1, are **DISMISSED without prejudice**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 3, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 3, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---